## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

SAM KNIGHT, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

AT&T, INC.,

Defendant.

CASE NO. ___CIV-24-324-J___

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff SAM KNIGHT ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant, AT&T Inc. ("AT&T" or "Defendant"), and alleges as follows:

### I.    INTRODUCTION

1.      This lawsuit stems from a massive and preventable data breach involving the personally identifiable information ("PII") of more than 70 million current and former AT&T customers (the "Data Breach" or "Breach").[1]

2.      Due to AT&T's inadequate data security, millions of current and former customers of Defendant had their social security numbers, full names, email and mailing addresses, phone numbers, and dates of birth, as well as AT&T account numbers and passcodes were leaked on the dark web.[2]

---

[1] https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web.
[2] *Id.*

1

3.     On March 30, 2024, AT&T publicly announced it was investigating a data breach involving the PII of more than 70 million current and former customers leaked on the dark web.[3]

4.     According to AT&T approximately 7.6 million current account holders and 65.4 million former account holders have been impacted.[4]

5.     While AT&T did not give specifics, AT&T claims the stolen PII was leaked on the dark web approximately two weeks ago, or on or around March 16, 2024.[5]

6.     It is unclear why AT&T waited two or more weeks to notify victims that their PII was on the dark web.

7.     So far, the AT&T has not identified the source of the data leak, at least publicly.[6]

8.     However, AT&T did disclose that the data set leaked on the dark web appears to be from 2019 or earlier.[7]

9.     AT&T states it is communicating with all victims of the data breach and will be offering credit monitoring, where applicable.

10.     Defendant's failure to timely detect and report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

---

[3] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html.
[4] https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web.
[5] *Id.*
[6] *Id.*
[7] *Id.*

11.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

12.     In failing to adequately protect Plaintiff's and the Class's PII, failing to adequately notify them of the Breach, and by obfuscating the nature of the breach, Defendant violated state and federal laws and harmed Plaintiff and the Class.

13.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures.

14.     Moreover, AT&T failed to properly use up-to-date security practices to prevent the Data Breach.

15.     Plaintiff Sam Knight is a Data Breach victim.[8]

16.     Accordingly, Plaintiff, on his own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## II.     PARTIES

17.     Plaintiff **Sam Knight** is a natural person and citizen of Oklahoma, where he intends to remain. Plaintiff is a Data Breach victim and received a Notice of Data Breach Email informing him that his full name, email address, mailing address, phone number, social security number, date of birth, AT&T account number and passcode were

---

[8] *See* **Exhibit 1** ("Notice of Data Breach Email").

compromised in the Data Breach.[9]

18.     Defendant, **AT&T Inc.** is a corporation organized under the state laws of Delaware with its headquarters and principal place of business located in Dallas, Texas. Defendant conducts substantial business in the State of Oklahoma and has availed itself of the laws of Oklahoma.

### III.     JURISDICTION & VENUE

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum  or value  of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiff and Defendant are citizens of different states.

20.     This Court has personal jurisdiction over Defendant because Defendant does substantial business in this District.

21.     Defendant has availed itself of the rights and benefits of the State of Oklahoma by engaging in activities including (i) directly and/or through its affiliates and agents providing services in this judicial district and abroad; (ii) conducting substantial business in this forum; (iii) having a registered agent to accept service of process in the State of Oklahoma; and/or (iv) engaging in other persistent courses of conduct and/or deriving revenue from services provided in Oklahoma and in this Judicial District

22.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

---

[9] *Id.*

substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.   FACTUAL ALLEGATIONS

*The Data Breach*

23.     AT&T is one of the largest telecommunications companies in the world with annual revenue of $163.71 billion.[10]

24.     AT&T was incorporated in 1983 and has its headquarters in Dallas, Texas.[11]

25.     AT&T's services and products include wireless communications, data/broadband and internet services, local and long-distance telephone services, telecommunications equipment, managed networking, and feature film, and television.[12]

26.     Through the services AT&T provided, Defendant collected and maintained Plaintiff and the Class's PII in its computer systems.

27.     In collecting and maintaining Plaintiff's and the Class's PII, Defendant implicitly agreed that it would protect and safeguard that PII by complying with state and federal laws and regulations and applicable industry standards.

28.     Defendant was in possession of Plaintiff and the Class's PII before, during, and after the Data Breach.

29.     On March 30, 2024, AT&T posted the following message[13] on its website:

---

[10] https://www.investopedia.com/articles/markets/030216/worlds-top-10-telecommunications-companies.asp.
[11] *Id.*
[12] *Id.*
[13] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html.



AT&T* has determined that AT&T data-specific fields were contained in a data set released on the dark web approximately two weeks ago. While AT&T has made this determination, it is not yet known whether the data in those fields originated from AT&T or one of its vendors. With respect to the balance of the data set, which includes personal information such as social security numbers, the source of the data is still being assessed.

AT&T has launched a robust investigation supported by internal and external cybersecurity experts. Based on our preliminary analysis, the data set appears to be from 2019 or earlier, impacting approximately 7.6 million current AT&T account holders and approximately 65.4 million former account holders.

Currently, AT&T does not have evidence of unauthorized access to its systems resulting in exfiltration of the data set. The company is communicating proactively with those impacted and will be offering credit monitoring at our expense where applicable. We encourage current and former customers with questions to visit www.att.com/accountsafety for more information.

As of today, this incident has not had a material impact on AT&T's operations.

30.    According to the notice above, AT&T determined on approximately

March 16, 2024, certain AT&T data-specific fields were contained in a data set that was

**released on the dark web**, a known marketplace for illegal activity.[14]

31.     The information exposed on the dark web included sensitive PII such as: social security numbers, full names, email and mailing addresses, phone numbers, and dates of birth, as well as AT&T account numbers and passcodes.[15]

32.     AT&T's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of millions of individuals highly sensitive PII, including that of Plaintiff and the Class.

33.     As a result of the Data Breach, Plaintiff's and the Class's personal and highly sensitive information is in the hands of cybercriminals who deliberately placed their PII on the dark web to be used for identity theft and fraud.

34.     Two weeks after Plaintiff's and the Class's PII was leaked on the dark web, AT&T finally began notifying victims of the Data Breach via email and letter.[16]

35.     AT&T claims it does not have any evidence of data exfiltration, however, the proof is in the pudding. Plaintiff's and the Class's PII is now on the dark web, as confirmed by AT&T.[17]

36.     Despite AT&T's duties to safeguard PII, AT&T did not follow industry standard practices in securing Plaintiff's and the Class's PII, as evidenced by the Data Breach.

37.     In response to the Data Breach, AT&T contends it has or will be taking

---

[14] *Id.*
[15] https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web.
[16] *See* Exhibit 1.
[17] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html.

steps to address the incident.[18] Although AT&T failed to expand on what these alleged "steps" are, such steps should have been in place before the Data Breach.

38.     Through the emails and letters Defendant sent to Plaintiff and the Class, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach and encouraged Data Breach victims to do the following:

> "We encourage customers to remain vigilant by monitoring account activity and credit reports. You can set up free fraud alerts from nationwide credit bureaus—Equifax, Experian, and TransUnion. You can also request and review your free credit report at any time via Freecreditreport.com."[19]

39.     Even though Social Security numbers were exposed here, cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

40.     Plaintiff was not offered any credit monitoring services from AT&T to help shoulder the burden of the Breach. Even if AT&T did offer credit monitoring services it would not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the Breach involves PII that cannot be changed, such as Social Security numbers and dates of birth.

41.     Even with complimentary credit monitoring services, the risk of identity

---

[18] *Id.*
[19] *See* Exhibit 1.

theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

42.     On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing them to lose control over Plaintiff and the Class's PII.

43.     Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendant were on Notice.***

44.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in similar industries preceding the date of the breach.

45.     Indeed, AT&T is no stranger to data breaches.

46.     In March 2023, for instance, the company notified 9 million wireless customers that their customer information had been accessed in a breach of a third-party marketing vendor.[20]

47.     In August 2021 — in an incident AT&T said is not connected to the latest breach — a hacking group claimed it was selling data relating to more than 70 million AT&T customers. At the time, AT&T disputed the source of the data. It was re-leaked

---

[20] https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web.

online earlier this month. According to a Mar. 22 TechCrunch article, a new analysis of the leaked dataset points to the AT&T customer data being authentic. "Some AT&T customers have confirmed their leaked customer data is accurate," TechCrunch reported. "But AT&T still hasn't said how its customers' data spilled online."[21]

48.  A 2023 report from cyber intelligence firm Cyble said that U.S. telecommunications companies are a lucrative target for hackers. The study attributed the majority of recent data breaches to third-party vendors. "These third-party breaches can lead to a larger scale supply-chain attacks and a greater number of impacted users and entities globally," the report said.[22]

49.  At all times AT&T was fully aware and on notice of the risk a data breach such as this posed but did nothing to prevent it.

50.  In light of recent high profile data breaches Defendant knew or should have known that their electronic records and Plaintiff and the Class's PII would be targeted by cybercriminals.

51.  In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[23] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records

---

[21] *Id.*

[22] *Id.*

[23] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf.

(28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[24]

52.     Indeed, cyberattacks against the both the legal industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[25]

53.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including AT&T.

***Plaintiff's Experience***

54.     Plaintiff received a Notice of Data Breach Email, dated March 31, 2024, notifying him that his PII had been identified by AT&T as being compromised in the Data Breach.[26]

55.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for weeks.

56.     As a result of the Data Breach, Plaintiff spent hours dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of

---

[24] *Id.*
[25]         Gordon       M.       Snow       Statement,       FBI https://archives.fbi.gov/archives/news/testimony/cyber-   security-threats-to-the-financial-sector.
[26] *See* Exhibit 1.

the Notice of Data Breach Email, self-monitoring his accounts and credit reports to monitor suspicious and fraudulent activity. This time has been lost forever and cannot be recaptured. Plaintiff has spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft for the rest of his life.

57.    Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach and disclosed on the dark web. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

58.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

59.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and released on the dark web.

60.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

61.    Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (a) the theft and publishing of Plaintiff's valuable PII on the dark web; (b) the imminent and certain impending injury flowing from fraud and identity

theft posed by Plaintiff's PII being placed in the hands of cyber criminals; (c) damages to and diminution in value of Plaintiff's PII; (d) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's PII; and (e) continued risk to Plaintiff's PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII that was entrusted to Defendant.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

62.     Plaintiff and members of the proposed Class have suffered injury from the theft of their PII that can be directly traced to Defendant.

63.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.   The loss of the opportunity to control how their PII is used;

    b.   The diminution in value of their PII;

    c.   The compromise and continuing publication of their PII;

    d.   out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages associated with the time and effort

expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen PII; and

h.   The continued risk to their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

64.   Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

65.   The value of Plaintiff's and the Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

66.   It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

67.   One such example of criminals using PII for profit is the development of "Fullz" packages.

68.   Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly

complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

69.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

70.    Defendant disclosed the PII of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

71.    Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

72.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

73.     In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

> a.     protect the sensitive consumer information that they keep;
>
> b.     properly dispose of PII that is no longer needed;
>
> c.     encrypt information stored on computer networks;
>
> d.     understand their network's vulnerabilities; and
>
> e.     implement policies to correct security problems.

74.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

75.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

76.     The FTC has brought enforcement actions against businesses for failing to

adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

77.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## V.     CLASS ACTION ALLEGATIONS

78.     Plaintiff sues on behalf of himself and the proposed nationwide class ("Class") defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> **All individuals residing in the United States whose PII was compromised in the Data Breach AT&T disclosed on or around March 30, 2024.**

Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

79.     Plaintiff reserves the right to amend the class definition.

80.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a.  **<u>Numerosity</u>**. Plaintiff is representative of the Class, consisting of at least **70,000,000 individuals**, far too many to join in a single action;

b.  **<u>Ascertainability</u>**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c.  **<u>Typicality</u>**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d.  **<u>Adequacy</u>**. Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including lead counsel.

e.  **<u>Commonality</u>**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

    i.  Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

    ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and

scope of the information compromised in the Data Breach;

iii.   Whether Defendant was negligent in maintaining, protecting, and  securing PII;

iv.   Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

v.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.   Whether Defendant's Breach Notice was reasonable;

vii.   Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii.   What the proper damages measure is; and

ix.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

81.     Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## VI.   CAUSES OF ACTION

### COUNT I
### Negligence

82.     Plaintiff realleges all previous paragraphs as if fully set forth below.

83.     Plaintiff and the Class's PII were entrusted to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, and to promptly detect attempts at unauthorized access.

84.     Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

85.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

86.     Defendant owed these duties to Plaintiff and members of the Class because

they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's PII.

87.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant held vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

88.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and the Class and the importance of exercising reasonable care in handling it. Especially with multiple other law firms experiencing data breaches.

89.    Defendant breached its duties by failing to exercise reasonable care in protecting the PII of Plaintiff and the Class, supervising and monitoring its employees, agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk

of future harm, embarrassment, humiliation, frustration, and emotional distress.

90.     Defendant's breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
### Negligence *Per Se*

91.     Plaintiff realleges all previous paragraphs as if fully set forth below.

92.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

93.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's PII.

94.     Defendant breached its respective duties to Plaintiff and Class Members

under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

95.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

96.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

97.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

98.     But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

99.     The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or

should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

100.    Had Plaintiff and the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have allowed Defendant to access their PII.

101.    Defendant's various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

102.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

103.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

### COUNT III
### Unjust Enrichment

104.    Plaintiff realleges all previous paragraphs as if fully set forth below.

105.    This claim is pleaded in the alternative to the breach of contract claim(s).

106.    Plaintiff and members of the Class conferred a benefit upon Defendant in in the form of their PII, which allowed Defendant to render services and make revenue therefrom.

107.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate the services it sold.

108.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of the benefit because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII to Defendant and/or a client of Defendant had they known Defendant would not adequately protect their PII.

109.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## COUNT IV
## Invasion of Privacy

110.    Plaintiff realleges all previous paragraphs as if fully set forth below.

111.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

112.    Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

113.    Defendant affirmatively and recklessly disclosed Plaintiff's and Class Members' PII to unauthorized third-parties.

114.    The unauthorized disclosure and/or acquisition (*i.e.*, theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

115.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

116.    Defendant's failure to protect Plaintiff's and Class Members' PII acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

117.    Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

118.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

119.    As a proximate result of Defendant's acts and omissions, Plaintiff's and the Class Members' private and sensitive PII was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

120.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with its inadequate cybersecurity system and policies.

121.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard Plaintiff's and the Class's PII.

122.    Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

123.    Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT V
## BREACH OF IMPLIED CONTRACT

124.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

125.    Defendant acquired and maintained the PII of Plaintiff and the Class including their Social Security numbers and other sensitive information to provide services.

126.    In exchange, Defendant entered into implied contracts with Plaintiff and the Class in which Defendant agreed to comply with its statutory and common law duties to protect Plaintiff's and Class Members' PII and timely notify them of a Data Breach.

127.    Based on Defendant's representations, legal obligations, and acceptance of Plaintiff' and the Class Members' PII, Defendant had an implied duty to safeguard their PII through the use of reasonable industry standards.

128.    Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and failing to provide them with timely and accurate notice of the Data Breach.  Indeed, it took Defendant months to warn Plaintiff and Class Member of their imminent risk of identity theft.

129.    As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and the Class Members have suffered damages, including foreseeable consequential damages that Defendant knew about when it requested Plaintiff's and the Class Members' PII.

130.    Plaintiff and the Class have suffered injuries as described herein, and are entitled to actual and punitive damages, statutory damages, and reasonable attorneys' fees and costs, in an amount to be proven at trial.

## VII.    <u>PRAYER FOR RELIEF</u>

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their

counsel to represent the Class;

B.      Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.      Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.      Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.      Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

## VIII.   **JURY DEMAND**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: April 1, 2024                          Respectfully submitted,

                                              */s/: William B. Federman*
                                              William B. Federman, OBA # 2853
                                              Kennedy M. Brian, OBA #34617
                                              **FEDERMAN & SHERWOOD**
                                              10205 N. Pennsylvania Ave.
                                              Oklahoma City, OK 73120
                                              P: 405-235-1560
                                              F: 405-239-2112
                                              E: wbf@federmanlaw.com
                                              E: kpb@federmanlaw.com